UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ELLIOTT A. DAVIS,

    Plaintiff,

vs.

WILLIAM BEAUMONT HOSPITAL,
d/b/a BEAUMONT HEALTH SYSTEM,
JONES LANG LASALLE AT BEAUMONT
HOSPITALS, LLC (formerly named)
BEAUMONT SERVICES COMPANY, LLC,
and SUBRA SRIPADA, jointly and severally,

    Defendants.

Case No.
Hon.

_____/
Raymond J. Sterling (P34456)
Jennifer L. Lord (P46912)
Christine A. Hopkins (P76264)
Attorneys for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
jlord@sterlingattorneys.com
chopkins@sterlingattorneys.com
_____/

# COMPLAINT AND JURY DEMAND

Plaintiff Elliott A. Davis, by his attorneys, Sterling Attorneys at Law, P.C., for his Complaint and Jury Demand against defendants William Beaumont Hospital, Jones Lang LaSalle at Beaumont Hospitals, LLC (formerly named) Beaumont Services Company, LLC, and Subra Sripada, submits the following:

## JURISDICTIONAL ALLEGATIONS

1.    Plaintiff is an individual residing in Troy, Michigan.

2. Defendant William Beaumont Hospital is a Michigan nonprofit corporation doing business as Beaumont Health System.

3. Defendant William Beaumont Hospital owns and operates hospitals and medical centers throughout the State of Michigan.

4. Defendant Jones Lang LaSalle at Beaumont Hospitals, LLC is a Michigan limited liability company that was previously named Beaumont Services Company, LLC.

5. Defendant Jones Lang LaSalle at Beaumont Hospitals, LLC provides services to William Beaumont Hospital.

6. Defendant Subra Sripada is an individual residing in the State of Michigan and the Executive Vice President and Chief Administrative and Information Officer of Beaumont Health System.

7. Plaintiff is a former employee of defendants.

8. Defendant William Beaumont Hospital is an employer as defined by the Age Discrimination in Employment Act, 29 USC 623(a), *et seq.*, the Americans with Disabilities Act, 42 USC 12101, *et seq.*, the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq.*

9. Defendant Jones Lang LaSalle at Beaumont Hospitals, LLC is an employer as defined by the Age Discrimination in Employment Act, 29 USC 623(a), *et seq.*, the Americans with Disabilities Act, 42 USC 12101, *et seq.*, the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq.*

10. Defendant Subra Sripada is an employer as defined by the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq.*, and the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq.*

11. The amount in controversy exceeds $75,000, exclusive of interest, costs, and attorney fees.

12. This Court has federal question jurisdiction under 28 USC 1331 because this action arises under the laws of the United States.

13. This Court has supplemental jurisdiction over plaintiff's supplemental state law claims under 28 USC 1367.

14. Venue is proper in this district under 28 USC 1391(a)(2) and (b)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district.

15. Plaintiff timely filed a charge of age and disability discrimination and retaliation with the EEOC.

16. Plaintiff timely filed this complaint within 90 days of receiving his EEOC right to sue notice.

## GENERAL ALLEGATIONS

### Plaintiff was a successful IT director at Beaumont

17. Plaintiff was born on January 23, 1953.

18. Plaintiff began working for defendants as an Assistant Director of Information Technology Services in November of 1999.

19. Plaintiff was a competent and hard working employee.

20. As a result of his dedication and expertise, plaintiff was eventually promoted to Director of Corporate Information Services and selected to serve as defendant's HIPAA Security Officer.

### Plaintiff undergoes spinal surgery and successfully returns to work

21. In 2001, plaintiff underwent spinal surgery.

22. The surgery left plaintiff with disabilities.

3

23. Plaintiff lost most of the feeling in his lower extremities as a result of the surgery.

24. The surgery left plaintiff with a limp and 'foot slap' caused by an inability to control the drop of his left foot when walking.

25. Plaintiff had difficulty climbing stairs.

26. Plaintiff could not sit for extended periods of time.

27. Plaintiff suffered from bladder control issues.

28. Prior to his disability,

   A. Plaintiff represented Beaumont at out of town standards committee meetings that discussed and recommended national standards for health and information technology practices;

   B. Plaintiff represented Beaumont at out of town industry conferences;

   C. Plaintiff regularly traveled to education seminars; and

   D. Plaintiff regularly traveled to vendor meetings.

29. Prior to his disability, defendant Beaumont regularly approved plaintiff's attendance at these important out of town training and networking events.

30. Plaintiff returned to work after the surgery.

31. Plaintiff remained fully capable of performing his job duties.

32. Plaintiff remained fully capable of traveling out of town.

33. Plaintiff remained fully capable of representing Beaumont at standards committee meetings, industry conferences, educational seminars, and vendor meetings.

34. After his disability, defendant Beaumont consistently denied plaintiff's requests to attend out of town training and networking events.

35. After his disability, defendant Beaumont never again permitted plaintiff to travel out of town for any business-related meetings.

36. After his disability, defendant Beaumont never again allowed plaintiff to represent Beaumont at any standards meetings or industry conferences.

37. Defendant Beaumont continued to send non-disabled employees to these important out of town training and networking opportunities.

### A new Chief Information Officer pushes for a younger IT Department

38. In 2009, defendant Beaumont installed a new Executive Vice President and Chief Administrative and Information Officer Subra Sripada.

39. Sripada demanded to know the ages of all of the employees in the IT Department.

40. Sripada announced on multiple occasions that he wanted younger employees in the IT Department.

41. Plaintiff heard Sripada's ageist comments.

42. Plaintiff participated in a telephone call with Sripada and an Associate Director about a candidate who had applied for the position of Director of Infrastructure Services.

43. During the call, Sripada demanded to know the candidate's age.

44. The Associate Director on the call cautioned Sripada that U.S. equal employment laws prohibit asking about an applicant's age.

45. Sripada refused to listen and insisted that he was from India, not the U.S., and that he needed to know the applicant's age before making the hiring decision.

46. Plaintiff reported Sripada's demand for the candidate's age to HR.

47. In the middle of 2010, Sripada re-classified the IT Department's older employees to lower-paying positions.

48. Sripada re-classified the IT Department employees to allow for increased salaries for the younger employees.

49. By October of 2011, Sripada had fired or demoted five executives between the ages of 49 and 62.

### The new Chief Information Officer continues to deny plaintiff training opportunities

50. After Sripada became the CIO, plaintiff continued to request approval to attend seminars and industry conferences on IT and HIPAA matters.

51. Sripada denied or ignored plaintiff's requests.

52. Sripada removed plaintiff from the list of employees scheduled to attend an important conference that plaintiff himself had coordinated on behalf of Beaumont.

53. Plaintiff informed a Director in the IT Department that all of his requests to attend out of town conferences, seminars and meetings had been denied since his return from his 2001 surgery.

54. The Director told plaintiff that he could file a written complaint, but warned plaintiff that that filing a complaint would not be good for his career.

### Plaintiff seeks intervention by Human Resources

55. In October of 2011, plaintiff met with the Vice President of Human Resources Jay Holden.

56. Plaintiff complained to Holden about Sripada's targeted termination of older workers.

57. Human Resources did not take any action in response to plaintiff's complaint of age discrimination.

### The Chief Information Officer humiliates plaintiff due to his disability

58. Throughout the time Sripada supervised plaintiff, Sripada ridiculed plaintiff's foot slap and limp.

59.     In executive meetings, Sripada and other IT executives laughed about the fact that people always knew when plaintiff was coming, and that plaintiff could not sneak up on anyone.

60.     In January of 2012, plaintiff's disability caused him to briefly excuse himself from a meeting of IT Department executives to use the restroom.

61.     When plaintiff returned to the room, Sripada loudly announced to the room full of executives that plaintiff needed to learn to hold his bladder longer.

62.     Plaintiff explained that he needed to use the restroom due to his disability.

63.     Plaintiff's explanation was met with laughter and a comment of "TMI" (too much information).

64.     Plaintiff sent an e-mail to Sripada and Human Resources expressing his concerns about Sripada's insensitive comment and "many years of ongoing teasing and harassing of my disability by the Beaumont IT leadership."

65.     Sripada told plaintiff that he should not have contacted Human Resources.

66.     Plaintiff continued to follow up with Human Resources in February of 2012, requesting an investigation into his complaint of disability discrimination.

**Plaintiff refuses to participate in illegal activity**

67.     In October of 2010, plaintiff objected to and refused to participate in the illegal destruction of evidence in a United States Department of Justice (DOJ) anti-trust investigation.

68.     As part of an anti-trust investigation into Blue Cross Blue Shield, the DOJ served a notice to Beaumont.

69.     The DOJ ordered that Beaumont preserve and produce the e-mails of former Beaumont Vice President Mark Johnson.

70.     In response, Sripada ordered the IT Department to delete Johnson's e-mails.

71. On Sripada's orders, IT department's Administrative Director instructed IT department employees to delete Johnson's e-mails.

72. Plaintiff was present when the Administrative Director gave the instruction to delete the e-mails.

73. Plaintiff knew that the DOJ had ordered the preservation and production of the e-mails.

74. Plaintiff interrupted the Administrator Director and objected to the deletion of the e-mails.

75. Plaintiff reminded the Administrative Director and the other employees present of the DOJ order.

76. Destruction of evidence in a DOJ antitrust investigation constitutes criminal obstruction of justice under 15 USC 1312 and 18 USC 1505.

77. The Administrative Director nonetheless ordered the destruction of the e-mails.

78. Plaintiff returned to his office and called the Legal Department to report that the e-mails were being deleted.

79. The Beaumont Legal Department subsequently required Beaumont IT to recover and produce back-ups of the deleted e-mails.

80. In 2011, plaintiff opposed Sripada on another legal matter.

81. Plaintiff, as Beaumont's HIPAA Security Officer, had a legal duty under 46 CFR § 164.308 to sanction Beaumont employees for violating HIPAA.

82. 46 CFR § 160.316 prohibits retaliation against employees who oppose practices that violate HIPAA.

83. In 2010, Beaumont's Privacy Officer found IT evidence that a Beaumont physician violated HIPAA by accessing medical records of three co-workers without permission.

84. In 2011, plaintiff prepared evidence and testimony to present to the Royal Oak Beaumont Medical Executive Group in a disciplinary proceeding against the physician.

85. Sripada and plaintiff met with legal affairs to discuss the disciplinary case against the physician.

86. After the meeting with legal, Sripada reprimanded plaintiff for failing to seek Sripada's permission before proceeding against the physician.

87. Sripada told plaintiff that the disciplinary case never should have gone to the Medical Executive Group.

88. Sripada told plaintiff that if he proceeded to present evidence and testimony to the Medical Executive Group, it would adversely affect his job.

89. Plaintiff nonetheless fulfilled his legal responsibilities as HIPAA Security Office by presenting evidence and testimony to the Medical Executive Group.

90. In February of 2012, Sripada learned that victims of the HIPAA violations planned to file a complaint against Beaumont with the U.S. Department of Health and Human Services Office of Civil Rights.

91. Sripada knew that the evidence and testimony plaintiff presented to the Medical Executive Group supported the victims' allegations.

92. Sripada's anger with plaintiff for participating in the disciplinary proceedings resurfaced.

**Defendants terminate plaintiff**

93. On March 1, 2012, Sripada met with plaintiff and terminated plaintiff's employment.

94. Sripada told plaintiff the reason for the discharge was that plaintiff "did not fit" and that there was no place for him at Beaumont.

95. A Human Resources representative was present at the termination meeting.

96. Plaintiff informed the Human Resources representative that he believed the real reason for his discharge was his complaint of discrimination.

97. The Human Resources representative did not respond to plaintiff's statement.

98. Plaintiff was 59 years old when defendants fired him.

99. Following plaintiff's termination, Sripada continued to demote other older employees in the IT Department.

## COUNT I
## AGE DISCRIMINATION – ADEA

100. Plaintiff incorporates the preceding paragraphs by reference.

101. Plaintiff was qualified for his position.

102. Defendants discriminated against plaintiff with respect to his term, conditions, and privileges of employment due to plaintiff's age.

103. Defendants treated younger employees more favorably than plaintiff and other older employees.

104. Defendants terminated plaintiff because of his age.

105. Defendants' alleged reason for terminating plaintiff was a pretext for age discrimination.

106. Defendants willfully violated plaintiff's rights under the ADEA.

107. Defendants' discrimination denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of his employment in violation of the Age Discrimination in Employment Act, 29 USC 623(a).

108. As a direct and proximate result of defendants' conduct, plaintiff has suffered injuries and is entitled to:

    A.    compensation for his loss of wages;

    B.    compensation for loss of fringe benefits;

    C.    compensation based on his earning potential;

    D.    liquidated damages;

    E.    other incidental and consequential damages, including attorney fees.

## COUNT II
## RETALIATION – ADEA

109. Plaintiff incorporates the preceding paragraphs by reference.

110. Plaintiff engaged in protected activity by making a complaint to defendants about age discrimination in the workplace.

111. Defendants terminated plaintiff because of his protected activity.

112. Defendants' alleged reason for terminating plaintiff was a pretext for retaliation.

113. Defendants willfully violated plaintiff's rights under the ADEA.

114. Defendants' retaliation denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of his employment in violation of the Age Discrimination in Employment Act, 29 USC 623(a).

115. As a direct and proximate result of defendants' conduct, plaintiff has suffered injuries and is entitled to:

    A.    compensation for his loss of wages;

    B.    compensation for loss of fringe benefits;

    C.    compensation based on his earning potential;

    D.    liquidated damages;

  E. emotional distress damages;

  F. punitive damages

  G. other incidental and consequential damages, including attorney fees.

## COUNT III
## AGE DISCRIMINATION – ELCRA

116. Plaintiff incorporates the preceding paragraphs by reference.

117. Plaintiff was qualified for his position.

118. Defendants discriminated against plaintiff with respect to his terms, conditions, and privileges of employment due to plaintiff's age.

119. Defendants treated younger employees more favorably than plaintiff and other older employees.

120. Plaintiff's age was a factor in defendants' decision to fire him.

121. Defendants' alleged reason for terminating plaintiff was a pretext for age discrimination.

122. Defendants' discrimination denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq*.

123. As a direct and proximate result of defendants' conduct, plaintiff has suffered injuries and is entitled to:

  A. compensation for his loss of wages;

  B. compensation for loss of fringe benefits;

  C. compensation based on his earning potential;

  D. emotional distress damages;

  E. other incidental and consequential damages, including attorney fees.

## COUNT IV
## RETALIATION – ELCRA

124. Plaintiff incorporates the preceding paragraphs by reference.

125. Plaintiff engaged in protected activity by making a complaint to defendants about age discrimination in the workplace.

126. Plaintiff's complaint of age discrimination was a factor in defendants' decision to fire him.

127. Defendants' alleged reason for terminating plaintiff was a pretext for retaliation.

128. Defendants' retaliation denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Elliott Larsen Civil Rights Act, MCL 37.2101, *et seq*.

129. As a direct and proximate result of defendants' conduct, plaintiff has suffered injuries and is entitled to:

   A. compensation for his loss of wages;

   B. compensation for loss of fringe benefits;

   C. compensation based on his earning potential;

   D. emotional distress damages;

   E. other incidental and consequential damages, including attorney fees.

## COUNT V
## DISABILITY DISCRIMINATION– ADA

130. Plaintiff incorporates the preceding paragraphs by reference.

131. Plaintiff suffers from a disability as defined in the Americans with Disabilities Act, 42 USC 12101, *et seq*.

132. Defendants knew or had reason to know of plaintiff's disability.

133. Plaintiff was qualified for his position.

134. Defendants discriminated against plaintiff with respect to his terms, conditions, and privileges of employment because of plaintiff's disabilities or because they perceived him to be disabled.

135. Defendants treated similarly situated employees who did not have disabilities and who were not regarded as disabled more favorably than plaintiff.

136. Defendants terminated plaintiff on the basis of his disability.

137. Defendants' alleged reason for firing plaintiff was a pretext for disability discrimination.

138. Defendants' discrimination denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Americans with Disabilities Act, 42 USC 12101, *et seq*.

139. As a direct and proximate result of defendants' conduct, plaintiff has suffered injuries and is entitled to:

    A. compensation for his loss of wages;

    B. compensation for loss of fringe benefits;

    C. compensation based on his earning potential;

    D. emotional distress damages;

    E. punitive damages; and

    F. other incidental and consequential damages, including attorney fees.

## COUNT VI
## RETALIATION – ADA

140. Plaintiff incorporates the preceding paragraphs by reference.

141. Plaintiff engaged in protected activity by making a complaint to defendants about disability discrimination in the workplace.

142. Defendants terminated plaintiff on the basis of his complaint about disability discrimination.

143. Defendants' alleged reason for firing plaintiff was a pretext for retaliation.

144. Defendants' retaliation denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Americans with Disabilities Act, 42 USC 12101, *et seq*.

145. As a direct and proximate result of defendants' conduct, plaintiff has suffered injuries and is entitled to:

   A. compensation for his loss of wages;

   B. compensation for loss of fringe benefits;

   C. compensation based on his earning potential;

   D. emotional distress damages;

   E. punitive damages; and

   F. other incidental and consequential damages, including attorney fees.

## COUNT VII
## DISABILITY DISCRIMINATION– MPWDCRA

146. Plaintiff incorporates the preceding paragraphs by reference.

147. Plaintiff suffers from a disability as defined in the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

148. Defendants knew or had reason to know of plaintiff's disability.

149. Plaintiff was qualified for his position.

150. Defendants discriminated against plaintiff with respect to his terms, conditions, and privileges of employment because of plaintiff's disabilities or because they perceived him to be disabled.

151. Defendants treated similarly situated employees who did not have disabilities and who were not regarded as disabled more favorably than plaintiff.

152. Defendants terminated plaintiff on the basis of his disability.

153. Defendants' alleged reason for firing plaintiff was a pretext for disability discrimination.

154. Defendants' discrimination denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq.*

155. As a direct and proximate result of defendants' discriminatory conduct, plaintiff has suffered injuries and is entitled to:

    A.    compensation for his loss of wages;

    B.    compensation for loss of fringe benefits;

    C.    compensation based on his earning potential;

    D.    emotional distress damages;

    E.    other incidental and consequential damages, including attorney fees.

## COUNT VIII
## RETALIATION – MPWDCRA

156. Plaintiff incorporates the preceding paragraphs by reference.

157. Plaintiff engaged in protected activity by making a complaint to defendants about disability discrimination in the workplace.

158. Defendants terminated plaintiff on the basis of his complaint about disability discrimination.

159. Defendants' alleged reason for firing plaintiff was a pretext for retaliation.

160. Defendants' retaliation denied plaintiff the opportunity for continued employment and adversely affected his compensation, terms, conditions, and privileges of employment in violation of the Michigan Persons with Disabilities Civil Rights Act, MCL 37.1101, *et seq*.

161. As a direct and proximate result of defendants' discriminatory conduct, plaintiff has suffered injuries and is entitled to:

    A.    compensation for his loss of wages;

    B.    compensation for loss of fringe benefits;

    C.    compensation based on his earning potential;

    D.    emotional distress damages;

    E.    other incidental and consequential damages, including attorney fees.

## COUNT IX
## TERMINATION IN VIOLATION OF PUBLIC POLICY

162. Plaintiff incorporates the preceding paragraphs by reference.

163. Michigan law allows a public policy claim if any of the following occurs: 1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty; 2) the employee is discharged for the failure or refusal to violate the law in the course of employment; or 3) the employee is discharged for exercising a right conferred by a well-established legislative enactment.

164. In the course of his employment, plaintiff refused to violate the law.

165. In the course of his employment, plaintiff exercised a right conferred on him by HIPAA.

166. Plaintiff was discharged for his refusal to violate the law and/or because he exercised a right conferred by well-established legislative enactments.

167. As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer severe injuries, including:

    A.    compensation for his loss of wages;

    B.    compensation for loss of fringe benefits;

    C.    compensation based on his earning potential;

    D.    emotional distress damages;

    E.    exemplary damages

    F.    other incidental and consequential damages, including attorney fees.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter judgment against defendants, in whatever amount in excess of Seventy-Five Thousand Dollars ($75,000) plaintiff is found to be entitled, together with liquidated, punitive and/or exemplary damages, reinstatement, interest as an element of damages, statutory interest, and attorney fees and costs.

## JURY DEMAND

Plaintiff Elliot A. Davis, by his attorneys Sterling Attorneys at Law, P.C., demands a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/Jennifer L. Lord
      Raymond J. Sterling (P34456)
      Jennifer L. Lord (P46912)
      Christine A. Hopkins (P76264)
      Attorneys for Plaintiff
      33 Bloomfield Hills Pkwy., Ste. 250
      Bloomfield Hills, MI 48304
      (248) 644-1500

Dated: May 7, 2013